OPINION
{¶ 1} Appellants, Hazelwood Builders, Inc., ("Hazelwood Builders") and Robert E. Gibbs ("Mr. Gibbs"), appeal from a judgment issued by the Lake County Court of Common Pleas. For the reasons that follow, we affirm.
 {¶ 2} This matter has an extended history in the common pleas court and this court. It concerns an ongoing dispute regarding a structure being constructed at 10447 Johnnycake Ridge Road, Concord Township, Ohio ("the property"), which is owned by Hazelwood Builders.
 {¶ 3} When Hazelwood Builders bought the property, the only existing structure was a horse barn. On May 10, 1990, appellants received a zoning permit allowing them to convert the existing barn into a dwelling. The dimensions set forth in the zoning permit were not at variance with any of the township zoning resolutions.
 {¶ 4} In March 1994, the adjacent property owner complained about the construction on the property. Russell D. Schaedlich ("Mr. Schaedlich"), the Concord Township zoning inspector, determined that three additions to the property were in violation of Concord Township Zoning Resolution, Section 15.06(A), which requires a dwelling to have a fifteen-foot side yard clearance.
 {¶ 5} On October 24, 1994, appellees, the Concord Township Trustees and Mr. Schaedlich, filed a complaint for a temporary restraining order and preliminary injunction requiring appellants' compliance with Section 15.06(A). On April 23, 1996, the common pleas court enjoined appellants from further construction of the additions until they obtained a zoning permit. It further ordered appellants to remove those portions of the additions that violated Section 15.06(A). We affirmed the judgment on appeal. Concord Twp. Trustees v. Hazelwood Builders, Inc. (May 16, 1997), 11th Dist. No. 96-L-075, 1997 Ohio App. LEXIS 2140.
 {¶ 6} On April 15, 1998, the common pleas court sustained appellees' motion to show cause and held appellants in contempt for failure to abide by its April 23, 1996 order. The court imposed a conditional fine of $5,000, plus an additional fine of $100 per day for each day the violations persisted. Appellants could purge the contempt if they complied with the court's order within ninety days. Appellants appealed from that judgment entry. We dismissed the appeal for lack of a final appealable order.
 {¶ 7} On May 21, 1999, in response to appellees' motion to impose sentence, the court found appellants in contempt and imposed the fine of $5,000, plus an additional fine of $100 per day for each day the violations persisted. However, it allowed appellants a ten-day stay of execution of the judgment and stated that, if the zoning violations were not corrected by May 27, 1999, the fine would be imposed on May 28, 1999.
 {¶ 8} Appellants appealed from that judgment entry, and we dismissed for lack of a final appealable order. As a result, the common pleas court issued a February 2, 2000 judgment which concluded that appellants were in contempt and enforced the foregoing fine from May 28, 1999.
 {¶ 9} Appellants appealed from the February 2, 2000 judgment, and we affirmed. Concord Twp. Trustees v. Hazelwood Builders, Inc. (Mar. 23, 2003), 11th Dist. No. 2000-L-040, 2001 Ohio App. LEXIS 1383.
 {¶ 10} On July 12, 2002, appellees filed a notice of exhaustion of appeals, which maintained that appellants were still in contempt and requested that the common pleas court immediately impose the fine. In response, appellants filed a notice of compliance which claimed that Concord Township had issued a zoning permit to appellants' agent, North Shore Kennels, Inc. ("North Shore"), allowing the property to be used for agricultural purposes. Attached to the notice of compliance was the zoning permit. Appellants argued that pursuant to R.C. 519.21, appellees had no authority to enforce Section 15.06(A), as the property was being used for the agricultural purpose of animal husbandry.
 {¶ 11} The court held a hearing to resolve whether appellants were in compliance with Section 15.06(A). Mr. Gibbs testified that his wife, Mrs. Gibbs, was the sole owner of North Shore and that the zoning permit was obtained so she could raise and breed dogs on the property as the corporate entity North Shore. He stated that although there were no dogs on the property at the time of the hearing, it was his wife's future intent to engage in animal husbandry. Mr. Gibbs' testimony further revealed that only a small portion of the home would be used for raising and breeding dogs and the remaining space would be used as a residence.
 {¶ 12} Following the hearing, the common pleas court issued a judgment entry which determined that "animal husbandry would be incident to the dominant use of the property as a residence and not vice versa, the provisions of R.C. § 519.21 * * * do not apply to bring the owner's violations into compliance." In doing so, the court noted that the zoning permit was signed by "North Shore Kennels Inc.," but took judicial notice, pursuant to Evid.R. 201, that North Shore Kennels was not a corporation at the time the zoning permit was signed.[1] Accordingly, the court found the zoning permit to be invalid because it was made to a non-existent entity and because it contained several material errors, misstatements, and misrepresentations of fact.
 {¶ 13} The court's judgment entry further revealed that the court and the parties visited and inspected the property. Based upon its inspection, the court found "no facilities in the residence or on the land specifically designed or adapted for the purpose of kenneling or breeding and raising dogs." The court further noted that appellants failed to present any plans, designs, or drawings to demonstrate the manner in which the property would be used for raising or breeding dogs. Instead, the court stated, "[a]lthough Mr. Gibbs testified that they could breed the dogs in the basement or garage and show them on the first floor front room of the residence, the court finds that that use or purpose is subordinated and secondary to the use of the structure as a residence." Thus, the court concluded that R.C. 519.21 was not applicable.
 {¶ 14} From this judgment, appellants have filed a timely notice of appeal and now set forth the following two assignments of error:
 {¶ 15} "[1.] The trial court abused its discretion and deprived defendants' of their rights to due process.
 {¶ 16} "[2.] The trial court abused its discretion and committed reversible error in finding that the zoning permit was invalid and that the subject property and building would not be used for an agricultural purpose."
 {¶ 17} Under their first assignment of error, appellants argue that various remarks made by the common pleas court during the hearing and within its judgment entry demonstrate the court's animus and bias toward appellants. Specifically, appellants maintain that, during the hearing, the court characterized their intended use of the property for agricultural purposes as a "charade" and implied that appellants were "spitting on the court." Appellants further contend that the judgment entry establishes the court's partiality based upon the following: (1) the court's independent factual investigation under Evid.R. 201; (2) the assumption that appellants were attempting to "subvert and circumvent the law and this court, and to provide yet another avenue to delay by multiple appeals"; (3) the court's statement that "[appellees] offered to forego any of the fine if defendants would agree to correct the violation and comply with this court's order forthwith. The defendants refused."; and (4) the court's imposition of a judgment that is rife with potential conflicts. Thus, appellants conclude that the common pleas court abused its discretion and deprived appellants of due process, as it failed to act as a neutral arbiter.
 {¶ 18} In discussing a common pleas court's duty of impartiality, this court, in State v. Bayer (1995), 102 Ohio App.3d 172, 174, stated:
 {¶ 19} "`It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to be tried by judges as free, impartial, and independent as the lot of humanity will admit.' * * *.
 {¶ 20} "[T]he judiciary must not only remain detached and neutral in any proceeding before it, but the court must also epitomize itself as the paragon of impartiality." (Citations omitted.)
 {¶ 21} The Ohio Supreme Court has noted:
 {¶ 22} "The term `biased or prejudiced,' when used in reference to a judge before whom a cause is pending implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." State ex rel. Pratt v.Weygandt (1956), 164 Ohio St. 463, at paragraph four of the syllabus.
 {¶ 23} First, the court's statements during the hearing, as read in their full context, fail to demonstrate any bias. The court's use of the word "charade" was stated as part of a question posed to appellants' attorney, to wit:
 {¶ 24} "The Judge: * * * Now an ancillary question to this: Just because someone says that they're going to have dogs bred in this gigantic house, don't I have to make a credibility call on whether that's a charade to try to get around the zoning requirements * * *?"
 {¶ 25} The foregoing fails to demonstrate any impartiality on the part of the common pleas court. To the contrary, the court merely posed an inquiry to appellants' attorney in an attempt to frame an issue of the hearing.
 {¶ 26} With respect to appellants' alleged future intent to engage in animal husbandry, the court further stated:
 {¶ 27} "The Judge: See, I want to get to the heart of this. Is this just being said to avoid the zoning? And this court issued an order and I can't have somebody spitting on the court."
 {¶ 28} Again, stated in its full context, the court's use of the phrase "spitting on the court" fails to establish any bias. This statement does not demonstrate any favoritism toward appellees, or that the court had formed an anticipatory judgment. Instead, the court was attempting to discuss with the parties the pending issues and, in doing so, emphasized that the court's authority must be respected. The statement fails to show that the court had already concluded appellants were in contempt.
 {¶ 29} The judgment entry also fails to show any bias or prejudice. The court's proper use of Evid.R. 201 to further investigate the corporate status of North Shore was not motivated by favoritism or ill will. Pursuant to Evid.R. 201, a court may take judicial notice of adjudicative facts, despite a party's failure to request such notice, and the court may take judicial notice at any stage of the proceeding. Accordingly, the court's use of Evid.R. 201 to take judicial notice, standing alone, fails to show bias. Moreover, absent is any evidence that the court used Evid.R. 201 due to an animus toward appellants.
 {¶ 30} The judgment entry's reference to appellants' attempt to "subvert" and "circumvent" the law was made as part of the court's legal conclusions, to wit:
 {¶ 31} "The court finds that the application by North Shore Kennels, Inc. for an agricultural permit was made more than four years after the court entered its order enjoining the construction and compelling the removal of the portions of the structure that violated the zoning resolution, and is an attempt to subvert and circumvent the law and this court, and to provide yet another avenue to delay by multiple appeals."
 {¶ 32} The foregoing statement represents the court's legalconclusion that appellants' attempt to apply the agricultural use exception was a pretense to delay or obviate the court's previous contempt order. This statement was supported by the court's factual findings which demonstrated appellants' extended history of appeals and appellants' consistent failure to comply with the contempt order. These factual findings were supported by the record. Accordingly, no bias was evident, as the court's legal conclusion was not the result of an anticipatory judgment or a closed state of mind.
 {¶ 33} Moreover, the statement that "[appellees] offered to forego any of the fine if defendants would agree to correct the violation and comply with this court's order forthwith. The defendants refused[,]" was a factual finding. Again, this factual finding was supported by the record and fails to establish any bias or prejudice.
 {¶ 34} Finally, the judgment entry's order for the removal of those portions of the residence which violate Section 15.06(A), the costs of such removal to be paid by appellees, and a tax lien for said amount placed on the auditor's tax duplicate, did not establish impartiality.
 {¶ 35} The court has broad discretion in fashioning a judgment that will allow appellees to enforce township zoning regulations. See, e.g.,Sharon Twp. Bd. of Trustees v. Crutchfield, 9th Dist. No. 3286-M, 2002-Ohio-4747, citing R.C. 519.24. Here, the record demonstrates that appellants were unable to pay for the costs incurred by modifying the existing residence to comply with Section 15.06(A). To expedite this matter, the court ordered appellees to pay for the modification and ordered that a lien for the costs be placed on the auditor's tax duplicate. Imposing this order fails to demonstrate that the court was biased.
 {¶ 36} Appellants have failed to establish that the court acted in an impartial manner or that the court acted as a non-neutral arbiter. Appellants' first assignment of error is without merit.
 {¶ 37} Under their second assignment of error, appellants argue that the court's decision, which found that the zoning permit was invalid, deprived them of a property right without due process of law and was against the manifest weight of the evidence. In particular, appellants maintain that the court failed to notify them that the validity of the zoning permit would be contested. Appellants further argue that the court's determination that R.C. 519.21 was inapplicable is not supported by the evidence.
 {¶ 38} First, we note that appellants attached a copy of the zoning permit to their notice of compliance in an attempt to demonstrate that, based upon the residence being used for an agricultural purpose, the residence was exempt from Section 15.06(A). At the hearing, appellants formally admitted the zoning permit as an exhibit for the same purpose. It is clear that appellants relied upon the zoning permit as evidence of their compliance with the township zoning regulations. An issue inherent to appellants' argument was whether the zoning permit was valid. Thus, the court was not required to notify appellants that it would be examining the validity of the zoning permit. This portion of appellants' second assignment of error is not well-taken.
 {¶ 39} Moreover, the court's determination that R.C. 519.21 was inapplicable was not against the manifest weight of the evidence. It is well established that "[j]udgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. In short, an appellate court may not simply substitute its judgment for that of the common pleas court so long as there is some competent, credible evidence to support the lower court's findings. Id. Thus, in the event that the evidence is reasonably susceptible to more than one interpretation, this court must construe it consistently with the lower court's judgment. Karches v. Cincinnati (1998), 38 Ohio St.3d 12,19.
 {¶ 40} Pursuant to R.C. 519.21(A), township zoning regulations shall not "prohibit the use of any land for agricultural purposes or the construction or use of buildings or structures incident to the use foragricultural purposes of the land on which such buildings or structures are located[.]" (Emphasis added.)
 {¶ 41} An agricultural purpose encompassed by R.C. 519.21(A) is animal husbandry. Harris v. Rootstown Twp. Zoning Bd. of Appeals (1975),44 Ohio St.2d 144, paragraph two of the syllabus. The breeding and raising of dogs constitutes animal husbandry. Id. at paragraph two of the syllabus. Nevertheless, the plain language of the statute requires the building or structure to be incident to the agricultural purpose. In other words, the agricultural purpose must be the primary use of the property.
 {¶ 42} Here, the common pleas court found that the structure on the property was not incident to the agricultural purpose. Instead, the court determined that the primary purpose of the residence was residential living, and the breeding and raising of dogs was an ancillary use. Therefore, the court noted that, in this case, R.C. 519.21(A) was inapplicable, as the residence was not incident to the breeding and raising of dogs.
 {¶ 43} This determination was supported by competent, credible evidence. Namely, Mr. Gibbs' testimony established that only a small portion of the residence would be used for animal husbandry, while the remaining area would be used for residential purposes. Furthermore, the court's viewing and description of the residence confirmed that the physical structure was designed primarily for residential living. Appellants failed to provide any plans or designs of the residence that would contradict the court's findings. Accordingly, the court's judgment was not against the manifest weight of the evidence, and this portion of appellants' second assignment of error is not well-taken.
 {¶ 44} Appellants' second assignment of error is without merit.
 {¶ 45} Based upon the foregoing analysis, appellants' first and second assignments of error are without merit. We hereby affirm the judgment of the common pleas court.
Ford, P.J., Grendell, J., concur.
[1] The court retrieved information from the public records of the Ohio Secretary of State, which posts articles of incorporation.